THE STATE OF OHIO, APPELLANT, *v.* JOHNSON, APPELLEE.

[Cite as State *v.* Johnson (1988), 40 Ohio St. 3d 130.]

(No. 88-232—Submitted October 5, 1988—Decided December 28, 1988.)

*Lee C. Falke,* prosecuting attorney, and *Carley J. Ingram,* for appellant.

*J. Allen Wilmes,* for appellee.

HOLMES, J. The basic question presented to this court upon appeal is whether the criminal defendant, appellee herein, in entering his bargained plea of guilty to crimes charged, has done so with all protections made available to him by way of constitutional provisions or Criminal Rule. Most particularly involved here is whether the sentencing information given to appellee allowed him to make an informed plea of guilty.

As previously stated, at the sentencing hearing, neither appellee nor his counsel objected to the manner in which sentencing was pronounced. Neither expressed to the judge any misunderstanding which appellee may have had as to the total maximum sentence that the law provided. There was no assertion made that the plea of guilty was not "knowingly" given as to all sentencing possibilities. At that point in time, if the appellee felt that he had been misinformed or not fully informed of his rights in the sentencing process, he could have, through counsel, availed himself of Crim. R. 32.1 and sought to withdraw his plea after sentencing, and such should be granted where manifest injustice is shown. However, even though not brought to the attention of the trial court, appellate courts will notice and rectify plain errors affecting substantial rights, particularly claimed denials of constitutional rights. See, *e.g., State* v. *Rogers* (1987), 32 Ohio St. 3d 70, 512 N.E. 2d 581, and *In re M.D.* (1988), 38 Ohio St. 3d 149, 527 N.E. 2d 286, paragraph one of the syllabus.

In *Boykin* v. *Alabama* (1969), 395 U.S. 238, the United States Supreme Court held that the Constitution requires that in order for a reviewing court to determine that a guilty plea was voluntarily made, the record must show that the defendant voluntarily and knowingly waived three rights: the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers.

These constitutional guarantees, along with other requirements, are set forth in Ohio's Crim. R. 11(C)(2). This rule instructs the trial court that before accepting a plea of guilty or a plea of no contest, the court must do the following:

"In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, .

and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

We have previously determined that this rule fully encompasses those procedural requirements established by the United States Constitution upon this issue. *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, 88, 5 O.O. 3d 52, 54, 364 N.E. 2d 1163, 1165. As stated previously, the constitutional requirements for acceptance of a voluntary guilty plea have been set forth in *Boykin* v. *Alabama, supra.* We have stated in this regard that the knowledge of the maximum and minimum sentences is not constitutionally required. *State* v. *Stewart, supra.* Similarly, in *Barbee* v. *Ruth* (C.A. 5, 1982), 678 F. 2d 634, 635, it was held that:

" 'The Constitution does not require that, in order to understand the consequences of a plea of guilty, the accused must be informed by the trial court, or must otherwise know, whether or not sentences imposed for separate crimes will run consecutively or concurrently.' "

We conclude that neither the United States Constitution nor the Ohio Constitution requires that in order for a guilty plea to be voluntary a defendant must be told the maximum total of the sentences he faces, or that the sentence could be imposed consecutively. Therefore, even though the trial court here did not specifically state that such sentences could run consecutively, but did explain the maximum sentences possible, there was no deprivation of appellee's constitutional rights.

Although there has been no violation of the appellee's constitutional rights here, we must determine whether there has been prejudicial error committed by the trial court regarding the mandates of Crim. R. 11(C). We begin our analysis by considering the text of the rule itself. A review of such rule, as set forth above, indicates that it requires the trial court to explain before it accepts "the plea," "*the* nature of *the* charge and of *the* maximum penalty involved." (Emphasis added.) Crim. R. 11(C)(2)(a). Upon its face the rule speaks in the singular. The term "the charge" indicates a single and individual criminal charge. So, too, does "the plea" refer to "a plea" which the court "shall not accept" until the dictates of the rule have been observed. Consequently, the term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered. It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.

Finally, the decision of whether the criminal defendant is to serve the sentences for all his crimes consecutively or concurrently is a matter of sentencing discretion, the exercise

of which is committed to the trial court. The exercise of such discretion can only occur after the defendant has been found guilty, whether by jury trial or by entry and acceptance of a plea. In the ordinary course of the proceedings, a trial court will refer the case to the probation department for a presentence report, which is then relied upon by the trial court in imposing sentence. This appears to have occurred in the present case. We note that Crim. R. 11 applies only to the entry and acceptance of the plea. It has no relevance to the exercise of the trial court's sentencing discretion at that stage other than directing the court to proceed with or impose sentencing. Thus, it can hardly be said that the rule imposes upon a trial judge a duty to explain what particular matters he may, at a later date, determine are significant to the exercise of his discretion. Moreover, explaining definitions of basic terms and calculating potential sentences are matters which are within the purview of legal representation, and of which even minimally competent trial counsel are capable.

Accordingly, we hold that there has not been such prejudicial error. In fact, there was *no* error by the trial court here because it carried out the specific mandate of Crim. R. 11(C) by stating to the defendant the exact maximum sentence for each of the crimes as provided by law. There is no specific requirement in such rule that an explanation be made that any sentences as given may run consecutively, or only concurrently, as might benefit the defendant. We shall not at this time implant verbiage that is not presently in the rule.

Further, appellee has failed to demonstrate that he was specifically prejudiced by such explanations of the trial court. Crim. R. 52(A) states that any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. Crim. R. 33(E)(5) provides that no judgment of conviction may be reversed in any court due to any cause unless it affirmatively appears from the record that the defendant was prejudiced thereby, or was prevented from having a fair trial. In this case, the test of prejudice is not whether appellee had knowledge of a maximum sentence involved, but the test of prejudice is whether the plea would otherwise have been made. *State* v. *Stewart, supra; State* v. *Waddell* (1985), 26 Ohio App. 3d 33, 26 OBR 202, 498 N.E. 2d 195.

Appellee did not argue in the trial court that had he known that he was subject to consecutive sentences, he would not have pled guilty. On appeal, in his brief, his argument was not that he was unaware of the consequences of his plea and that had he been aware he would not have pled guilty; instead, his argument was that the court did not comply with Crim. R. 11(C)(2) and so the plea was *ipso facto* involuntary. In response to the state's allegation of lack of prejudice, appellee filed in the court of appeals an affidavit wherein he claimed that he was unaware of the possibility of consecutive sentences, and that had he known, he would not have pled guilty. This declaration of prejudice was meant to supply evidence otherwise lacking on appeal, but is not part of the record and so does not serve to establish prejudice. App. R. 9 and 12(A).

In addition to appellee's failure to show prejudice, the record suggests that he was not at all prejudiced. The state deleted all references to firearms in both the indictment and the bill of information and obtained dismissal of the count of unlawful possession of dangerous ordnance, all of which was in exchange for appellee's guilty pleas. This arrangement was advantageous

to appellee in that it removed from sentencing consideration a fourth degree felony and a firearm specification. The latter, by itself, would have resulted in three additional years of actual incarceration upon conviction, and would have made the remaining offenses non-probationable. See R.C. 2929.71 and 2951.02.

In conclusion, we hold that there was no prejudicial error shown here. The judgment of the court of appeals is reversed and the cause is remanded to the trial court for reinstatement of appellee's convictions.

*Judgment reversed.*

MOYER, C.J., LOCHER, DOUGLAS and H. BROWN, JJ., concur.

SWEENEY and WRIGHT, JJ., dissent.

H. BROWN, J., concurring. I join in the judgment, syllabus, and the opinion of the majority insofar as it goes. However, I believe that Justice Wright, in his dissent, identifies an important point of fairness. Though it does not rise to the level of constitutional error and though there has been a technical compliance with Crim. R. 11(C)(2), the preferred practice would be for the trial judge to inform a defendant that sentences may be imposed consecutively before accepting a guilty plea to multiple offenses. Further, I believe the trial judge should tell the defendant what the maximum possible punishment for all offenses may be and not leave that mathematical computation to the defendant.

WRIGHT, J., dissenting. In this particular case the trial judge carefully advised appellee of the possible minimum and maximum penalties for each of the three offenses to which Johnson ultimately entered a guilty plea. Likewise, the trial court noted that the offenses were probationable and even referred this matter to the probation department for a presentence investigation before ultimately rendering consecutive sentences on all three offenses. However, no reference whatsoever was made to the possible maximum penalty for all the offenses and, as stated by the court of appeals, "* * * more importantly, no advice was offered as to whether the defendant was eligible for consecutive or concurrent sentences." It would appear to me that the majority has become preoccupied with form and is ignoring what happens in a real live courtroom. As the court of appeals so aptly put it, "* * * a defendant is probably more concerned with the prospects of 'doing time' than with constitutional rights or legal niceties." I think it incumbent on any trial judge who renders any real degree of adherence to the letter and spirit of Crim. R. 11 to explain the difference between consecutive and concurrent sentences. We should do likewise.

To me it is most regrettable that in large measure we are parting company with the general philosophy as contained in *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, 5 O.O. 3d 52, 364 N.E. 2d 1163, and *State* v. *Griffey* (1973), 35 Ohio St. 2d 101, 64 O.O. 2d 62, 298 N.E. 2d 603. In *Stewart* we held that "substantial compliance" with Crim. R. 11 was enough, rejecting in some measure the rigid application of the rule found in *Griffey*. But where is the "substantial compliance" when the trial judge fails to give the defendant even a reasonable idea of the possible maximum period of future incarceration? In point of fact, the "maximum penalty involved" is as the court of appeals stated the most coercive and compelling deterrent in the entire plea

process. I would most certainly accept the rule adopted in *State* v. *Ricks* (1977), 53 Ohio App. 2d 244, 7 O.O. 3d 299, 372 N.E. 2d 1369, where paragraph one of the syllabus provides as follows:

"Before accepting a plea of guilty, the trial court must inquire and determine that the defendant understands the maximum penalty involved. As part of this process, the defendant must be informed whether he is eligible for consecutive or concurrent sentences. Crim. R. 11(C)(2)(a)."

The rule, as construed aforesaid, places no substantial burden on the trial judge, is a proposition that involves only elemental fairness to the defendant, and meets both the letter and the spirit of the case law construing same prior to today's pronouncement.

Accordingly, I would affirm the court of appeals and respectfully dissent from the reasoning and result achieved in this case.

SWEENEY, J., concurs in the foregoing dissenting opinion.